## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHERYL GAILEY, | : | 1:15-cv-564 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| LIFE INSURANCE COMPANY OF | : | |
| NORTH AMERICA, | : | |
| | : | |
| Defendant, | : | |

## MEMORANDUM

### October 17, 2016

Presently before the Court are the parties' cross motions for summary judgment. Plaintiff Cheryl Gailey ("Gailey") filed a Motion for Summary Judgment on May 23, 2016. ("Gailey's Motion") (Doc. 42). Defendant Life Insurance Company of North America ("Life Insurance") also filed a Motion for Summary judgment on May 23, 2016. ("Life Insurance's Motion") (Doc. 44). Gailey asserts two counts against Life Insurance. Count I is an alleged violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132(a)(1)(B), seeking the recovery of disability plan benefits. Count II is another alleged violation of ERISA under § 1133, seeking an award of attorney's fees for Life Insurance's failure to follow the plan's procedures.

## I.    BACKGROUND

The record of this case is comprised of the Administrative Record submitted to Life Insurance in support of Gailey's claim for disability benefits. (Doc. 39). [1] The Court notes that the parties do not appear to dispute any of the facts, but rather the proper inferences to be derived from them.

Plaintiff Cheryl Gailey began working for LifeCare Management Services in 2004. (Doc. 49, ¶ 1). [2] Gailey was promoted to the position of business office manager in May 2012. (*Id*., at ¶ 2). Gailey is forty eight years old and reports having anxiety and depression issues since she was about twenty years old. (Doc. 39, p. 599).

Defendant Life Insurance Company of North America issued a Group Long Term Disability Insurance Policy to LifeCare. (the "Plan") (Doc. 45, ¶ 1). As plan administrator, LifeCare appointed Life Insurance as the named fiduciary for deciding claims for benefits under the Plan and for deciding appeals of denied claims. (*Id*., at ¶ 2).

The Plan affords benefits to those who qualify as "disabled" under the following definition:

---

[1] When citing to the Administrative Record, the Court will refer to the bates stamp page numbers.
[2] LifeCare Management Services changed its name to New LifeCare Management Services at some point prior to the events that give rise to this action. (Doc. 45, ¶ 2). For purposes of clarity, the court refers to the company as LifeCare.

"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1. unable to perform the material duties of his or her Regular Occupation; and

2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation." (*Id*., at ¶ 7).

The Plan limits disability benefits for mental illnesses and related other conditions to 24 months of benefits. As office manager, Gailey was eligible for Long Term Disability benefits under the Plan if she qualified as disabled. (*Id*., at ¶ 5).

Gailey last worked for LifeCare on July 15, 2013, when she reported having an emotional breakdown and left the office "crying, shaking" and having a panic attack. (Doc. 39, p. 599). According to Gailey, she has been "unable to return to work since then." (*Id*.). She had previously been approved for short term disability benefits. (*Id*., at p. 491). She applied for long term disability benefits under the Plan on July 29, 2013. (Doc. 49, ¶ 5).

Certified Registered Nurse Practitioner Sandra Abbey ("Abbey") is Gailey's regular therapist. (*Id*., at ¶ 6). On August 6, 2013, Gailey was admitted to an outpatient program at a mental health facility called Philhaven on Abbey's referral. (*Id*., at ¶ 7). Gailey received outpatient treatment at Philhaven from August 6 to October 10, 2013. (Doc. 39, p. 474). In the Philhaven admission documents, Gailey reportedly told the physician that she had to take two months off from work in LifeCare in 2012 because she was feeling so depressed. (*Id*., at p. 464). Gailey's

therapist at Philhaven, Amy Loser, originally had scheduled Gailey's return to work date for September 1, but extended that date and opined that Gailey should be able to return to work on October 14, 2013. (*Id*., at p. 472). Gailey's discharge instructions from Philhaven indicate diagnoses of generalized anxiety disorder, mood disorder, and psychosocial and environmental problems. (*Id*., at p. 474).

Gailey did not return to work after her treatment at Philhaven. (Doc. 45, ¶ 18). Her treating Nurse Practitioner, Abbey, opined on October 18, 2013, that Gailey cannot multitask, has a poor response to stress, and cannot work at present. (Doc. 39, p. 534).

On November 21, 2013, a Life Insurance representative told Gailey that her disability claim was being denied, to which Gailey reportedly responded by stating "that she was going to kill herself using her husband's gun." (*Id*., at p. 44). The next day, Gaily was admitted to Philhaven for inpatient treatment with diagnoses of major depressive disorder and generalized anxiety disorder. (*Id*., at p. 485). Gailey was discharged four days later on November 26, 2013, with the discharge summary indicating that she "presented with an appropriate affect" and denied suicidal ideations. (*Id*., at p. 492). Gailey received an official letter of the denial of her claim on November 25, 2013. (*Id*., at p. 505).

On December 4, 2013, Abbey opined that Gailey "is currently totally disabled due to her mental illness" and "is unable and will never again be able to

perform the duties of her regular occupation as Office Manager at New Life Care Management, LLC." (*Id*., at p. 495). Abbey went on to say that Gailey "is totally disabled from performing any duties for any occupation which she is or could reasonably become qualified based on her education and expertise." (*Id*.).

Gailey appealed the denial of benefits to Life Insurance through counsel on April 3, 2014. (*Id*., at p. 444). By letter dated June 3, 2014, Life Insurance partially upheld and partially reversed its earlier denial of Gailey's disability claim. (*Id*., at pp. 201-212). Life Insurance awarded benefits to Gailey for October 14, 2013, the date she was originally supposed to return to work after outpatient treatment at Philhaven, to November 26, 2013, the date of Gailey's discharge from the Philhaven inpatient program, but denied any benefits thereafter. (*Id*.).

Gailey appealed Life Insurance's June 3, 2014 decision on November 26, 2014, arguing that she was entitled to long term disability benefits beyond November 26, 2013. (*Id*., at p. 312). In the interim, Gailey consistently had therapy appointments with Abbey and submitted the treatment notes to Life Insurance for review. Abbey's treatment notes are incredibly varied, documenting both Gailey's progression towards better coping skills and her regressive episodes. (*See generally id*., at pp. 329-420). Further, the Social Security Administration awarded Gailey monthly disability benefits on October 13, 2014. (Doc. 48, ex. AAA).

Life Insurance retained Genex Services, LLC to assist with the evaluation of

Gailey's appeal through a peer review. (Doc. 45, ¶ 34). Genex hired Fred Moss, a

board certified psychiatrist, to review Gailey's medical records and offer a medical

opinion regarding her alleged disability. (*Id*., at ¶ 35). On December 28, 2014,

Moss opined that:

> "[t]here are no objective findings from a psychiatric standpoint that indicates
> the claimant is mentally, cognitively, and/or behaviorally impaired as of
> 11/26/2013 and continuing. While notes reflect the claimant has subjective
> complaints that support diagnosis of Major Depressive disorder, the mental
> status examination findings indicate the claimant is psychiatrically stable
> and there are no impairments behaviorally, mentally, or cognitively. As a
> result, there are no work activity restrictions that are medically required due
> to a psychiatric condition."  (Doc. 39, p. 309).

On January 9, 2015, Life Insurance denied Gailey's appeal and found that

she was not disabled as defined by the Plan. (*Id*., at pp. 203-205). In its denial, Life

Insurance explained that it considered that Gailey was awarded Social Security

Disability benefits, but found that it had more recent information to consider that

warranted a different outcome. (*Id*., at p. 204). Life Insurance cited to the fact that

there "has been no increase in the level of care, no changes in mental status, and no

additional treatment modalities to indicate" that Gailey was impaired after

November 26, 2013. (*Id*.). Life Insurance acknowledged that Gailey had been

attending regularly weekly appointments with Abbey for "emotional regulation",

but ultimately deferred to the opinions of the board certified psychiatrists that

treated Gailey in Philhaven and Moss's peer review. (*Id*.).

Gailey filed this action on March 20, 2015, alleging that Life Insurance's denial constituted a violation of ERISA. (Doc. 1). The parties have filed cross motions for summary judgment. (Docs. 42, 44). The motions have been fully briefed and are therefore ripe for our review. (Docs. 43, 46, 56, 59, 60, 61). For the reasons that follow, we shall grant Life Insurance's Motion and deny Gailey's Motion.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## III.   DISCUSSION

Gailey has alleged two counts of ERISA violations against Life Insurance. Count I alleges that Life Insurance has wrongly withheld long term disability benefits from Gailey in violation of ERISA § 1132. Count II alleges that Life Insurance violated the procedural guidelines of ERISA § 1133. The parties have moved for summary judgment on both counts. We will address each count in turn.

### A. Count I- ERISA, 29 U.S.C. §1132(a)(1)(B)

Section 1132(a)(1)(B) of ERISA provides plaintiffs a right of action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). To prevail on a claim under § 1132(a)(1)(B), Gailey must demonstrate that she has "a right to benefits that is legally enforceable against the plan, and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (internal quotations omitted). Before we can assess whether Life Insurance properly denied Gailey's application for long term disability benefits, we must determine what standard of review to apply to this matter.

The Supreme Court has instructed that courts are to review the denial of benefits challenged under § 1132(a)(1)(B) "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*

*Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a plan grants its administrator the discretion to determine eligibility or to construe the plan terms, "we review a denial of benefits under an 'arbitrary and capricious' standard." *Orvosh v. Program of Grp. Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000).

Gailey advocates for a *de novo* standard of review by conclusively stating that the Plan does not give Life Insurance discretionary authority in reviewing and deciding claims. (Doc. 43, p. 7). Gailey responds to Life Insurance's specific citation of the grant of discretionary authority in the Plan by simply restating that there was no discretion afforded. (Doc. 56, p. 9). Contrary to Gailey's assertions, the Administrative Record in this case includes an "Appointment of Claim Fiduciary" contract where LifeCare, as Plan administrator, appointed Life Insurance as Claim Fiduciary. (Doc. 39, p. 673). This agreement gave Life Insurance "the authority, ***in its discretion***, to interpret the terms of the Plan, including the Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." (*Id.*) (emphasis added). This delegation of discretionary power is exactly what the Supreme Court contemplated in *Firestone*, and we find that the proper standard of review for us to employ is whether Life Insurance's denial was arbitrary and capricious.

"An administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir.2011) (quoting *Abnathya v. Hoffmann–La Roche*, Inc., 2 F.3d 40, 45 (3d Cir.1993)) (internal quotation marks omitted). The arbitrary and capricious standard of review is essentially the same as the abuse of discretion standard. *Rizzo v. Paul Revere Ins. Grp.*, 925 F. Supp. 302, 310 (D.N.J. 1996), aff'd, 111 F.3d 127 (3d Cir. 1997). Under this standard, the "scope of review is narrow and 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" *Abnathya,* 2 F.3d at 45 (quoting *Lucash v. Strick Corp.*, 602 F.Supp. 430, 434 (E.D.Pa.1984)).

Gailey asks the Court to employ a "heightened form of the arbitrary and capricious standard of review," relying on *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir. 2000) (Doc. 56, p. 18). There, the Third Circuit stated that where a structural conflict of interest exists, namely "when an insurance company both funds and administers benefits," a heightened standard of review is applicable. *Id*. There is no dispute that a structural conflict exists here; Life Insurance has admitted that it both funds and administers benefits. (Doc. 46, p. 22). However, as Life Insurance correctly pointed out, the *Pinto* sliding scale of standards of review was abrogated by the Supreme Court in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008).

Post-*Glenn*, the Third Circuit has found that the "'sliding scale' approach is no longer valid." *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009). "Instead, courts reviewing the decisions of ERISA plan administrators or fiduciaries in civil enforcement actions brought pursuant to 29 U.S.C. § 1132(a)(1)(B) should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion." *Id*.

Considering the structural conflict of interest at play, all of the evidence considered by Life Insurance in deciding Gailey's claim for benefits, the Social Security Administration's determination that Gailey is disabled, and the relevant plan terms and policies, we find that Life Insurance's denial of Gailey's claim was not arbitrary or capricious.

Life Insurance has cited to a multitude of evidence that it considered in finding that Gailey was not "disabled" under the Plan after November 26, 2013. To name a few, Life Insurance pointed to the rise of Gailey's psychological stability upon her discharge from the inpatient program at Philhaven (Doc. 46, p. 19), a February 21, 2004 office note from Abbey indicating that Gailey was continuing to improve (*Id*., at p. 9), a May 26, 2014 office note from Abbey indicating that Gailey's communication skills were improving (*Id*.), Moss's peer review

conclusion that Gailey was not disabled (*Id*., at p. 13), Gailey's preparation for a vacation (*Id*., at p. 11), and her lack of effort in finding other work. (*Id.*). Further, Life Insurance cited to the fact that there "has been no increase in the level of care, no changes in mental status, and no additional treatment modalities to indicate" that Gailey was impaired after November 26, 2013. (Doc 39, p. 204).

Gailey argues that Life Insurance's denial was improper because it did not defer to Abbey or the Social Security Administration's opinion that Gailey was disabled. (Doc. 56, pp. 11, 13). However, the Court finds that Life Insurance has offered reasonable reasons for not deferring to these opinions in its denial of benefits such that we cannot find that the decision was arbitrary and capricious. Life Insurance states that it did not defer to Abbey's conclusion that Gailey was disabled because Abbey is a Certified Nurse Practitioner, rather than a board-certified psychiatrist. (Doc. 46, p. 20). Life Insurance had treatment notes from Gailey's treaters at Philhaven and retained a board-certified psychiatrist to review Gailey's file. (*Id*). It considered all of this information, as well as Abbey's treatment notes. (*Id*.). Life Insurance was not bound to defer to Gailey's treating physician, and has offered a reasonable explanation for why it chose not to. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (ERISA does not require "plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition").

Life Insurance has similarly offered a reasonable explanation for not deferring to the Social Security Administration's finding that Gailey is disabled. While a finding of disability by the Social Security Administration is undoubtedly relevant, "a plan administrator is not bound by such ruling, particularly in light of the different eligibility standards imposed for a finding of ERISA disability versus SSA disability." *Robinson v. Liberty Life Assur. Co. of Boston*, 25 F. Supp. 3d 541, 555 (M.D. Pa. 2014) (Jones, J.). Gailey applied for Social Security on October 13, 2014. (Doc. 48, ex. AAA). Life Insurance received the peer review report from Moss on December 28, 2014. (Doc. 39, 309). The Social Security Administration did not have this report, and Life Insurance placed great weight on Moss' opinion because he was a board-certified psychiatrist retained by an independent third party. The peer review report represents new evidence that illuminates how Life Insurance and the Social Security Administration could reasonably have come to differing conclusions regarding Gailey's disability.

Further, Gailey argues that she "lacked the sophistication of Defendant; and had no information accessible to her, other than the Plan." (Doc. 56, p. 20). She also points out that her requests to engage in discovery have been denied by the Court. (*Id*.). However, it seems clear that Gailey was able to submit all the evidence that she wished to Life Insurance in support of her claim and her multiple appeals. There is nothing to suggest that she was not afforded reasonable

opportunities to be heard and to present her claim under the Plan. Discovery with this Court was unnecessary; our role is to determine whether Life Insurance abused its discretion in evaluating Gailey's claim based on the evidence it had before it at the time a decision was made. *Dandridge v. Raytheon Co.*, 2010 WL 376598, at *3 (D.N.J. Jan. 26, 2010) ("[t]he Third Circuit has often reiterated that arbitrary and capricious reviews of benefit determinations should occur on the basis of the administrative record assembled before the claim administrator").

To be sure, the "arbitrary and capricious" standard of review is a deferential standard that is difficult to overcome. In light of the foregoing, we cannot find that Life Insurance's denial was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller*, 632 F.3d at 845 (quotation marks omitted). For that reason, we shall grant Life Insurance's Motion and deny Gailey's Motion with respect to Count I.

### B. Count II- ERISA, 29 U.S.C. § 1133

Count II seeks relief under Section 503 of ERISA, 29 U.S.C. § 1133, which mandates that notice and a reasonable opportunity to be heard be given to a beneficiary whose claim has been denied under a benefits plan. 29 U.S.C. § 1133. Gailey grounds her claim in the fact that Life Insurance issued its denial of Gailey's appeal 60 days after its filing, in violation of the Plan's 45 day deadline. (Doc. 43, p. 12). Gailey acknowledges that Section 503 has no remedial scheme for

violations, but instead argues that an appropriate remedy would be an award of attorney's fees and litigation costs. (*Id.*).

Section 502 of ERISA "provides the private right of action to bring a claim to recover benefits due," while Section 503 "sets forth the basic requirements governing ERISA plans." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 851 (3d Cir. 2011). A violation of Section 503 may be "probative of whether the decision to deny benefits was arbitrary and capricious," *see Miller*, 632 F.3d at 851, but the general principle is "that an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy." *Ashenbaugh v. Crucible Inc.*, 854 F.2d 1516, 1532 (3d Cir. 1988). Thus, Section 503 "does not create a private right of action." *Blakely v. WSMW Indus., Inc.*, 2004 WL 1739717, at *10 (D. Del. July 20, 2004).

The Third Circuit recognized that an exception to this general rule exists, and a private right of action may be supported upon a showing of "egregious circumstances." *Ashenbaugh*, 854 F.2d at 1532. However, Gailey has only alleged in conclusory terms that "[f]orcing Gailey to endure and finance two administrative appeals, and a federal lawsuit" constitute egregious circumstances. (Doc. 56, p. 22). Gailey has not even tried to show how her appeals and lawsuit are linked to a fifteen day delay in the issuance of her denial such that the violation would be "egregious." To be sure, Gailey's entire argument regarding Count II is found

within just a few conclusory paragraphs. Finding that Gailey does not have a private right of action under Section 503, we shall grant Life Insurances' Motion and deny Gailey's Motion with respect to Count II.

## IV.    CONCLUSION

For the foregoing reasons, we shall grant Defendant's Motion for Summary Judgment (Doc. 44) and deny Plaintiff's Motion for Summary Judgment. (Doc. 42).  A separate order shall issue in accordance with this ruling.